192 So.2d 422 (1966)
R.D. EVERITT, Russell Fox and Brad Dye, Jr., Commissioners, Mississippi Workmen's Compensation Commission
v.
Clifton F. LOVITT.
No. 44139.
Supreme Court of Mississippi.
November 28, 1966.
*423 Joe T. Patterson, Atty. Gen., by Martin R. McLendon, Asst. Atty. Gen., Jackson, for appellants.
Pyles & Tucker, Jackson, for appellee.
Dan McCullen and Butler, Snow, O'Mara, Stevens & Cannada, Jackson, amici curiae.
BRADY, Justice.
With reference to the Mississippi Workmen's Compensation law, this case is one of first impression. The record does not involve an appeal from the Mississippi Workmen's Compensation Commission but involves a writ of prohibition issued by the Circuit Court of Hinds County, Mississippi, prohibiting the Commission from requiring a compensation claimant to undergo medical examination in connection with his claim for benefits.
This appeal is from an original action instituted by the appellee in the Circuit Court of the First Circuit Court District of Hinds County, Mississippi, to prohibit the Commission from exercising one of its administrative functions during the course of the hearing of appellee's compensation claim. The pertinent facts essential to the determination of the issues involved are as follows:
On August 20, 1963, appellee was employed as a pipe fitter for Fluor Corporation at Pascagoula, Mississippi, and on said date American Motorists Insurance Company was employer's compensation carrier. While welding on that date, the appellee sustained a knee injury which was handled as a medical claim inasmuch as the claimant did not miss five days from work.
Subsequently, on October 10, 1963, appellee applied for benefits, not only for his knee injury but also for a back injury which he allegedly sustained on August 20, 1963. An initial hearing was held on February 10, 1964, and the employer and carrier voluntarily assumed liability for temporary total disability and paid temporary total benefits to the appellee to November 3, 1964. Thereafter, on June 30, 1965, the hearing was resumed before the Commission for the purpose of determining the extent of appellee's disability and its relation, if any, to the injury of August 20, 1963.
On July 30, 1965, Dr. Anthony J. Santangelo, the only witness who was called, testified over appellant's objection that appellee was suffering from a psychiatric or emotional problem. The employer and carrier had had no prior notice of any claim for an alleged mental or nervous condition. Appellee's application for benefits claimed only knee and spinal injuries.
The employer and carrier moved for an order to require appellee to be examined by Dr. Richard W. Naef, a neuropsychiatrist of Jackson, Mississippi. This motion was strenuously resisted by appellee's attorney, but the motion was sustained by the attorney referee on July 30, 1965. The ruling *424 of the attorney referee was in the following language:
I overrule the objection and sustain the motion. I agree with you. I don't think they have the right to request that he be seen by Dr. Naef but I have the power to make a broad investigation of the claimant's situation and I'm going to authorize an examination by Dr. Naef.
Appellee's attorney insisted that if the employer and carrier wanted the testimony of Dr. Naef it could be procured by hypothetical questions, but that the employer and carrier did not have a right to require a physical examination of the appellee.
The record further discloses that on October 10, 1963, after having returned to his home in Jackson and after having worked for other employers, appellee filed for compensation benefits against Fluor Corporation and American Motorists Insurance Company for the injury of August 20, 1963, contending for the first time that he had a back injury in addition to the knee injury. Simultaneously with the filing of Form B-5, 11, appellee's attorneys requested medical benefits from the employer and carrier. In reply to the request for medical treatment the carrier on October 11, 1963, notified appellee's attorneys that it was selecting Dr. George D. Purvis, an orthopedic surgeon of Jackson, Mississippi, as appellee's treating physician. It appears that Dr. Purvis was out of town at that time and appellee could not have reached him, but the record further discloses that appellee never went to Dr. Purvis for examination or treatment and never intended to do so.
On December 31, 1963, the Commission and the employer and carrier's attorneys were notified by appellee's counsel that the appellee of his own accord had gone to Dr. William B. Tumlinson, a general practitioner, on November 24, 1963. Dr. Thomas S. Eddleman, an orthopedic surgeon, was called in for consultation and the latter performed surgery on appellee on November 27, 1963. The operation was for the repair of the cartilage in the left knee. This surgery, it appears, was performed without the knowledge of the employer and carrier and at a time when Dr. George D. Purvis, a competent orthopedic surgeon, had been designated as the treating physician by the carrier pursuant to section 7 of the act. The employer and carrier notified appellee's attorney and the Commission that they rejected Dr. Tumlinson as the treating physician, not only because he was an unauthorized physician, but also because his charges were unreasonable.
Dr. Tumlinson and appellee were notified by carrier's attorney on April 20, 1964, of the rejection of Dr. Tumlinson by the employer and carrier. Despite this notice of rejection, appellee continued under the care of Dr. Tumlinson in violation of section 7 of the act. Notwithstanding the rejection of Dr. Tumlinson as the treating physician and without making any prior request of the employer and carrier for psychiatric treatment, the appellee was referred to Dr. Anthony J. Santangelo, a neuropsychiatrist, on December 3, 1964, by Dr. Tumlinson.
Appellee was again seen by Dr. Santangelo on January 25, 1965. Dr. Santangelo admitted that he had not furnished the employer and carrier medical reports within twenty days following his examination of appellee as required by section 7 of the act. He further admitted that he had not furnished medical reports to carrier's attorney.
The record discloses that neither the employer, the carrier nor their attorneys were furnished medical reports by Dr. Santangelo in compliance with procedural rule 9, nor were said parties notified in writing prior to the July 30, 1965, hearing that Dr. Santangelo would be called as a witness. The record indicates that it was but two days before the hearing that the appellants received any notice whatever that Dr. Santangelo was going to testify.
Appellants objected to Dr. Santangelo's testifying but were overruled by the Commission. Appellants also objected to Dr. *425 Santangelo's evaluation of an emotional or a psychiatric problem since the pleadings contended for disability only for the alleged injury to the left knee and an alleged injury to the lumbar spine. This objection likewise was overruled.
Immediately after the conclusion of Dr. Santangelo's testimony, the employer and carrier moved that appellee submit himself to Dr. Richard W. Naef, a neurologist and neuropsychiatrist, for examination. After thorough argument, the motion was sustained by the attorney referee, and on that date an appointment was obtained with Dr. Naef by the employer and carrier. Appellee, his attorney and the physician were notified of the place and date of the examination.
Appellee did not continue with the prosecution of his claim before the Workmen's Compensation Commission nor did he appeal from the attorney referee's order of July 30, 1965, but, in lieu thereof, he instituted an original petition for the writ of prohibition in the Circuit Court of the First Circuit Court District of Hinds County, Mississippi, against the three compensation commissioners, appellants herein. A temporary writ of prohibition was granted by said circuit court without notice on August 4, 1965.
On September 3, 1965, a general demurrer and answer were filed in behalf of appellants. The demurrer was overruled on November 11, 1965, and a final judgment making the temporary writ of prohibition permanent was entered on December 10, 1965. From said final judgment, this appeal is perfected to this Court by the three compensation commissioners.
Two cardinal questions are presented in this cause. The first is: Did the lower court err in issuing the writ of prohibition? At the outset it should be noted that the Mississippi statutes vest full and complete jurisdiction to hear and determine claims for benefits under the workmen's compensation law in the Workmen's Compensation Commission. Miss. Code Ann. § 6998-01 (1952). This is in accord with the general rule of law:
A workmen's compensation board or commission is generally clothed with full and complete jurisdiction to determine in the first instance all questions arising under the compensation law, and to hear and determine all matters relating to the administration and enforcement of the compensation act, and, within the sphere of its special or limited jurisdiction, the jurisdiction of a compensation board or commission is usually original, primary, and exclusive, and no other tribunal can exercise original jurisdiction for the enforcement of the terms and provisions of the act. (100 C.J.S. Workmen's Compensation § 383 at pp. 139-140 (1958).)
It is pointed out in 73 C.J.S. Prohibition § 12a at pp. 66-68 (1951) as follows:
Prohibition ordinarily does not lie to correct or restrict errors or irregularities of a tribunal which is acting within its jurisdiction, although proceeding improperly in the exercise of that jurisdiction. Where the inferior court or tribunal has jurisdiction of the person and subject matter, prohibition does not lie to prevent an erroneous decision or to prevent the enforcement of an erroneous judgment. A writ of prohibition may not be used to control the discretion of the inferior court or officer or to force a particular judgment. An inferior court ordinarily may not by an order in the nature of prohibition be commanded or advised in advance to exercise its functions in a prescribed manner, and will not be prohibited from proceeding with the determination of a cause within its jurisdiction merely on a complaint that it may abuse its discretion. In other words, in determining whether prohibition will lie, the question is whether the error is one which results in usurping jurisdiction or is only error within the framework of the court's jurisdiction; and facts which do not go to the power of *426 the inferior court, but only to the wisdom and propriety of its decree, do not constitute an adequate ground for invoking the power of the appellate court to issue a writ of prohibition.
In Barnes v. Ladner, 241 Miss. 606, 619, 131 So.2d 458, 462-463 (1961), we pointed out, among other things, as follows:
(A)nd in our opinion the petition stated no grounds for relief by prohibition for the additional reason that the petition sought to restrain the respondent from doing the very acts and performing the specific duties imposed upon him by law.
Appellant's demurrer to the petition for writ of prohibition raised the express legal issue of whether the writ would lie under the facts alleged in the petition. The principal grounds assigned in support of the demurrer were that: (1) The order complained of was clearly within the authority and jurisdiction of the Commission and the writ prohibited appellants from performing the very duty imposed on them by statute; and (2) the writ would not lie because petitioner had a plain, adequate and speedy remedy in the ordinary course of law by appeal. That an adequate and complete remedy at law was available to the appellee is shown by the decision in Wilby v. Board of Supervisors of Jones County, 226 Miss. 744, 85 So.2d 195 (1956), wherein we noted that the writ of prohibition is an extraordinary and remedial writ which lies only to control an inferior court or tribunal in the attempted exercise of judicial powers in excess of its jurisdiction.
There are interrelated rules of law which demonstrate the fact that the lower court was in error in granting the writ of prohibition. The courts of Mississippi and the courts generally have developed a number of doctrines which require litigants to address their complaints initially to administrative tribunals rather than to the courts and further require such litigants to exhaust all possibilities of obtaining relief through administrative channels before appealing to the courts. These pertinent principles may be separated into three principal classes:
1. The doctrine under which no equitable relief nor any extraordinary legal relief is available where there is an adequate remedy at law has been extended to embrace administrative remedies. Davis v. Barr, 250 Miss. 54, 157 So.2d 505, 163 So.2d 745 (1963); Mississippi Valley Gas Co. v. City of Jackson, 236 Miss. 81, 109 So.2d 637 (1959); 2 Am.Jur.2d Administrative Law §§ 596, 599 (1962).
2. The necessity of exhausting all available administrative remedies before turning to the courts for relief. This principle is ordinarily described as the doctrine requiring the "exhaustion of administrative remedies." 2 Am.Jur.2d Administrative Law §§ 595-609 (1962).
3. The doctrine that administrative agencies have exclusive original jurisdiction of particular matters which precludes an original action in court in regard to such matters. This doctrine is referred to as the doctrine of "exclusive administrative jurisdiction." Davis v. Barr, supra; Scott v. Lowe, 223 Miss. 312, 78 So.2d 452 (1955); 2 Am.Jur.2d Administrative Law §§ 779, 790 (1962).
This Court has applied these rules of law in numerous situations including proceedings for writs of mandamus, certiorari and injunction. It should be remembered that (a) this is not a suit between purely private litigants but a suit to enjoin a public body from discharging the duties and responsibilities assigned to such body by statute; (b) the appellee is asserting rights under the Mississippi Workmen's Compensation law, an act which grants to appellee the special rights and privileges sought to be asserted in the proceeding before the Commission; and (c) at the time the present suit was filed, there was pending before the Commission an administrative proceeding which was initiated by the appellee.
*427 The Mississippi Workmen's Compensation Commission has full power and authority to determine all questions relating to claims for compensation, including the authority to make such investigations as it deems necessary. Miss. Code Ann. § 6998-24 (1952). Furthermore, the Commission has specific authority to order medical examinations. Miss. Code Ann. § 6998-19(h) (1952). There is also specific provision for comprehensive judicial review of the Commission's action. Miss. Code Ann. § 6998-26 (1952).
In the recent case of Scott v. Lowe, supra, a fire department captain sued to enjoin certain city officials from transferring him to another station. This action was based on the complainant's rights under the Civil Service Act. In reversing the issuance of an injunction, we discussed the three doctrines listed above, but actually applied the rule that the statutory remedy was adequate and exclusive. We pointed out in that case:
Appellee asks for a judicial review of a threatened administrative and executive action of the fire chief and governing authorities of the City of Laurel, by the use of an injunction in chancery. Yet he is relying upon the provisions of the Civil Service Act, which grants to him special rights and privileges and which expressly provides for a method of appeal. If a litigant has a plain, adequate and complete remedy at law, he cannot resort to the extraordinary injunctive procedure of chancery. Griffith, Miss. Chancery Practice, (2d ed. 1950), Secs. 436, 438; Illinois Cent. R. Co. v. Mississippi Public Service Commission, Miss. 1954 [220 Miss. 439], 71 So.2d 176. (223 Miss. at 316-317, 78 So.2d at 453-454.)
In Illinois Central R.R. Co. v. Mississippi Public Service Commission, 220 Miss. 439, 71 So.2d 176 (1954), we held that the railroad had an adequate and complete remedy by statutory appeal from an adverse order of the Public Service Commission. Hence, it could not obtain judicial review by injunctive proceedings.
In the case at bar, just as in Scott v. Lowe, supra, the appellee is asserting rights under a specific statute, the Mississippi Workmen's Compensation Law. The reasoning and logic employed in Scott have direct application here and the same result is in order. The Scott case furthermore was approved and followed in Davis v. Barr, 250 Miss. 54, 157 So.2d 505 (1963), where certiorari was denied, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1963). In the Davis case an action was brought to suppress and enjoin an assessment for state income taxes. In affirming the chancellor's dismissal of the suit for injunction this Court discussed the doctrines listed above and based its decision on the doctrine requiring the exhaustion of administrative remedies and the doctrine of exclusive administrative jurisdiction. We there said, among other things:
One of the new rules growing out of administrative law is that known as exhaustion of administrative remedies. The above-mentioned textwriter points out in § 595, p. 426, as follows: "The doctrine of exhaustion of administrative remedies requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will act. This doctrine is well established, is a cardinal principle of practically universal application, and must be borne in mind by the courts in construing a statute providing for review of administrative action. * * * (250 Miss. at 61-62, 157 So.2d at 507.)
Likewise, in Powe v. Forrest County Election Commission, 249 Miss. 757, 163 So.2d 656 (1964), in upholding the dismissal of an action for a writ of mandamus, the Court held that persons aggrieved by the orders of an election commission must exhaust their administrative remedies as a prerequisite to judicial review.
*428 It is obvious from the foregoing rulings that in Mississippi the doctrine under which no equitable relief or extraordinary relief is available where there is an adequate remedy at law has been extended to embrace administrative remedies. Davis v. Barr, supra; 2 Am.Jur.2d Administrative Law § 596 at 429 (1962).
Furthermore, the doctrine under which no such extraordinary legal or equitable relief is available where there is an adequate remedy at law has been extended to include cases in which there exists a right of statutory appeal from the action of the administrative agency. Mississippi Valley Gas Co. v. City of Jackson, 236 Miss. 81, 109 So.2d 637 (1959); Illinois Central R.R. Co. v. Mississippi Pub. Serv. Comm'n, supra.
The rule requiring exhaustion of administrative remedies will be applied even though a party contends that the action of the administrative agency is beyond the power and jurisdiction of the agency. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). In the Myers case the United States Supreme Court said:
The contention (of complainant) is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. That rule has been repeatedly acted on in cases where, as here, the contention is made that the administrative body lacked power over the subject matter. (303 U.S. at 50-51, 58 S.Ct. at 463-464, 82 L.Ed. at 644.)
Our Court reached a similar result in West Brothers, Inc. v. Mississippi Public Service Commission, 186 So.2d 202 (Miss. 1966), in which we held that injunctive proceedings could not be used to test the constitutionality of an administrative agency's action where adequate administrative remedies had not yet been completely exhausted.
In the present case it is apparent that the appellee had a full, complete and adequate remedy at law by pursuing his administrative remedies before the Workmen's Compensation Commission and then taking a statutory appeal, if necessary. The Workmen's Compensation Commission has the exclusive administrative jurisdiction of the questions presented by appellee's claim. The appellee failed to exhaust his administrative remedies, but in lieu thereof went into the circuit court and by injunctive process sought to arrest and prevent the Workmen's Compensation Commission from performing the express duties for which the legislature created this administrative agency. It is obvious, therefore, that the lower court plainly erred in issuing the writ of prohibition and in attempting to prevent the Workmen's Compensation Commission from performing its prescribed duties.
Turning to the second fundamental question of whether the Commission had the authority to appoint Dr. Naef to examine the appellee, we again point out that the appellee refused to accept the services of Dr. George Purvis who was designated by the employer and carrier. Despite the fact that Dr. Tumlinson was rejected by the employer and carrier, the appellee persisted in using Dr. Tumlinson. Dr. Eddleman performed an operation on appellee's knee on November 27, 1963, and the employer and carrier were not notified of that fact until December 30, 1963. Though the appellee, his attorneys, the Commission and Dr. Tumlinson were all notified that the services of Dr. Tumlinson had been rejected by the employer and carrier, Dr. Tumlinson was still utilized by the appellee. Dr. Tumlinson referred appellee to Dr. Santangelo, a psychiatrist, for an alleged psychiatric problem which the appellee purported to have, although the claim for benefits was limited to injuries to the left knee and the lumbar spine. Although neither the employer, the carrier nor their attorney were given a five days' notice as required by procedural rule 9, and even though Dr. *429 Santangelo had not furnished medical reports to the employer and carrier within twenty days of his treatment as required by section 7, Dr. Santangelo was nevertheless called as a witness on July 30, 1965, to testify as to the psychiatric condition of the appellee. Over the objection of the employer and carrier, Dr. Santangelo testified concerning his evaluation of appellee's condition. The employer and carrier moved that the appellee be examined by Dr. Naef. This motion was properly and promptly sustained by the Commission. It should be pointed out that the attorney referee agreed with appellee's attorney that the employer and carrier did not have the right to designate the doctor to examine appellee. However, the attorney referee was of the opinion that he had the right to make such a designation.
In determining whether the Commission acted within its authority in designating Dr. Naef, we must consider Mississippi Code Annotated section 6998-08(b) (1952), which provides as follows:
Whenever in the opinion of the commission a physician has not correctly estimated the degree of permanent disability, or the extent of the temporary disability of an injured employee, the commission shall have the power to cause such employee to be examined by a physician selected by the commission and to obtain from such physician a report containing his estimate of such disabilities. * * *
A cursory examination of Dr. Santangelo's testimony would convince the most dubious that the Commission was well justified in challenging the correctness of his opinion. Dr. Santangelo's opinion as to appellee's disability was based entirely upon the medical history given him by the appellee, including statements made to him by appellee concerning back surgery which in fact had never taken place. The simple fact that Dr. Santangelo predicated his opinion upon the assumption that back surgery had been performed was sufficient reason to justify the Commission in rejecting his testimony. Furthermore, Mississippi Code Annotated section 6998-19(h) (1952) provides as follows:
The commission (1) may upon its own initiative at any time in a case in which payments are being made without an award, and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation, or from the employer, that the right to compensation is controverted, or that payments of compensation have been stopped or suspended, make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as it considers will properly protect the rights of all parties.
The record discloses that the right to compensation was being controverted on July 30, 1965, when the appellee was ordered to be examined. There is no doubt but that the payments of compensation had been stopped at that time. There was no question but that the employer's denial of compensation in its B-5 and B-11 had been on file with the Commission since October 31, 1963. These facts are undisputed. Mississippi Code Annotated section 6998-19(h) (1952) makes it mandatory for the Commission to "cause such medical examinations to be made * * * and take such further action as it considers will properly protect the rights of the parties." While this authority is probably sufficient, nevertheless the Workmen's Compensation Act goes further and delegates to the Commission full power and authority to determine all questions relating to the payment of claims for compensation. Section 6998-24 provides, among other things, as follows:

Determination of claims for compensation.  Except as otherwise provided by this act, the details of practice and procedure in the settlement and adjudication of claims shall be determined by rules of the commission, the text of which shall be *430 published and be readily available to interested parties.
The commission shall have full power and authority to determine all questions relating to the payment of claims for compensation. The commission shall make or cause to be made such investigation as it deems necessary, and upon application of either party, or upon its own initiative, shall order a hearing, and shall make or deny an award and file the same in its office.
There appears little doubt but that the Commission was properly and lawfully exercising its administrative function in ordering appellee to be examined by Dr. Naef. Not only did the Commission properly exercise its administrative duties when it ordered the appellee to be examined by Dr. Naef, but if compensation benefits were then being paid to appellee, the Commission had the authority to require the suspension of benefits until appellee submitted to such examination. Section 6998-08 provides in part as follows:
If at any time during such period the employee unreasonably refuses to submit to medical or surgical treatment, the commission shall, by order, suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension.
The authority of the Commission to require the examination of the appellee and to fully investigate his claims is so clear that nothing further need be said in regard thereto. Moreover, this Court has held that the Commission may order a reexamination of a claimant in order that it may reach a proper decision. Jackson Ready-Mix Concrete v. Young, 236 Miss. 550, 111 So.2d 255 (1959); De Weese Lbr. Co. v. Poole, 231 Miss. 83, 94 So.2d 791 (1957).
Appellee violated both the spirit and the letter of procedural rule 9 with reference to giving opposing counsel notice of his medical witnesses and written reports from such witnesses. Despite all this, appellee now contends that the Commission had no authority to order him to Dr. Naef for an examination. The fact that Dr. Naef was suggested by the employer and carrier does not vitiate the authority of the Commission and the attorney referee to designate him as the examining physician. The Workmen's Compensation Act is social legislation which constitutes a radical departure from common-law. It imposes liability without fault upon the employer and carrier. The only redress available to the employer and carrier in a case such as this is to have the claimant examined by competent physicians to determine whether disability is compensable, and, if so, the extent of such disability. If the judgment of the circuit court should be affirmed by this Court, then this Court would in substance be doing what we refused to do in West Brothers, supra. We would be permitting claimants to search at will until they finally found some medical testimony which was in support of their theory. In such cases the employer and carrier would have to accept it regardless of their rights under the act.
From the foregoing authorities it is clear that the Commission's action in directing appellee to Dr. Naef for examination was authorized under the Workmen's Compensation Act. When claimant resorted to the circuit court for the writ of prohibition, he in effect requested the court to prohibit the Commission from doing that which it was expressly authorized and required to do by the act. The circuit court cannot by its action tie the hands of the administrative body charged with the duty of investigating and determining the issues of fact over which it has exclusive jurisdiction. It is obvious that the Commission sought to exercise the proper administrative function under the terms of our Workmen's Compensation Act and the order of the circuit court prohibiting the exercise thereof was in error and without authority in law.
*431 For these reasons the judgment of the Circuit Court of the First Judicial District of Hinds County is reversed and judgment is rendered here dissolving the writ of prohibition.
Reversed and judgment rendered here.
ETHRIDGE, C.J., and JONES, PATTERSON and SMITH, JJ., concur.